CARMEN G. RODRÍGUEZ GONZÁLEZ, demandante y recurrida, *v.* JENARO COLLAZO COLLAZO ET AL., demandados y recurrentes.

*Número:* R-78-63     *Resuelto:* 17 de mayo de 1978

*José Ramón Pérez Hernández,* abogado de los recurrentes; *Maymí* y *Guzmán Géigel,* abogados de la recurrida.

RESOLUCIÓN

A la moción de reconsideración en el recurso de epígrafe no ha lugar.

Lo acordó el Tribunal y certifica el Secretario. El Juez Presidente, Señor Trías Monge, y los Jueces Asociados Señores Dávila y Martín hubieran concedido autorización para elevar la transcripción de evidencia solicitada por los demandados-recurrentes en apoyo de la moción de reconsideración. El Juez Asociado Señor Martín emitió voto separado explicando su posición. El Juez Asociado Señor Rigau se inhibió.

(*Fdo.*) Ernesto L. Chiesa

*Secretario*

—O—

Voto disidente en reconsideración emitido por el Juez Asociado Señor Martín.

San Juan, Puerto Rico, a 17 de mayo de 1978

Se trata del despido de la demandante de su puesto de Trabajadora Social VI en el Departamento de Servicios Sociales.(1) El tribunal de instancia ordenó su reposición al

---

(1) Aparentemente la Junta de Apelaciones del Sistema de Administración de Personal no estaba aún constituida para la fecha en que fue radicada la acción—4 de abril de 1977. Surge del expediente que la demandante acudió a la Junta el 15 de abril de 1977 solicitando orden de reposición, pero no fue hasta el 5 de agosto de 1977 que la Junta pidió a las partes un memorando explicativo sobre sus contenciones respectivas. En vista de que su petición de *injunction* solicitando reposición por alegado

determinar como cuestión de hecho: (1) que la demandante comenzó a ejercer su profesión de trabajadora social en el Departamento de Instrucción hasta marzo de 1973 en que fue nombrada Directora Ejecutiva II del Departamento de Servicios Sociales, primero como representante del Secretario y luego como Directora de la Región de Guayama, hasta diciembre 31 de 1976 que pasó a ocupar un puesto de Trabajadora Social VI en la misma región de Guayama hasta el 21 de marzo de 1977 en que fue suspendida; y (2) que la cancelación del nombramiento se debió a razones políticas únicamente, considerando que reúne los requisitos necesarios para ocupar el puesto de Trabajadora Social VI por lo que tiene derecho a continuar en el mismo.

El Secretario de Servicios Sociales acudió ante nos en recurso de revisión en el que hace los siguientes señalamientos: (1) que el mero hecho de pertenecer a un partido político distinto al de la autoridad nominadora no debe utilizarse como inferencia para probar discrimen político, especialmente cuando las actuaciones de los funcionarios actores están dentro del marco legal y reglamentario de la ley que se implementa; (2) que el Secretario solicitó, en 17 de enero de 1977, dos meses antes del despido, una reevaluación de la solicitud que sometiera la demandante para que se le incluyera en el registro de elegibles para la plaza de Trabajadora Social VI, lo cual indicaba que estaba dispuesto a acatar la reevaluación; (3) que la demandante no podía utilizar para acreditación la experiencia de unos nombramientos previos de Director Ejecutivo I y II que no solamente eran provisionales y probatorios, a tenor con la Circular 1-73 de la Oficina de Personal, sino ilegales por no cumplir con los requisitos de dichos puestos, por haberse obviado las normas de reclutamiento sin que la demandante pasara por los diferentes

---

discrimen político estaba ya ante el tribunal de instancia, la demandante parece haber abandonado su apelación ante la Junta, por lo que fue desestimada en 6 de octubre de 1977.

niveles de ejecución de su clase, y sin haber participado en ninguna clase de competencia para ser nombrada, y que más bien gozaban de la naturaleza de autorizaciones especiales—de emergencia, y (4) que el nombramiento de la demandante como Trabajadora Social VI es inválido por haber sido efectuado contra la prohibición expresa de la Sec. 1337 del Título 3 de las Leyes de Puerto Rico Anotadas que invalida cualquier transacción de personal que envuelve las áreas esenciales al principio de mérito efectuadas dentro del período de dos meses antes y dos meses después de las elecciones generales en Puerto Rico.

Al solicitar el Secretario de Servicios Sociales la revisión de la sentencia del tribunal de instancia nos pidió autorización para elevar la transcripción de la prueba desfilada para ponernos en condiciones de examinar la prueba. Al denegar el auto solicitado quedó denegada automáticamente la transcripción de la prueba.

El Secretario acude nuevamente ante nos en solicitud de reconsideración de nuestra resolución denegatoria del auto. Yo reconsideraría a los fines de permitir la transcripción de la evidencia. Un somero examen de dicha petición revela que está debidamente fundamentada, y demuestra su empeño en demostrar que ciertas determinaciones de hecho adicionales que le fueron solicitadas y negadas están sostenidas por la prueba. A los fines de un mejor entendimiento de la necesidad de examinar la prueba me permito copiar las determinaciones adicionales solicitadas:

"1. La demandante ocupó un puesto de Trabajador Social Escolar en el Departamento de Instrucción con status provisional y probatorio por un período de 3 años y 7 meses (hasta marzo de 1973).

2. Efectivo al 1 de marzo de 1973, mediante las disposiciones de la Circular 1-73 de la Oficina Central de Administración de Personal, la Sra. Rodríguez fue nombrada con status transitorio en un puesto de Director Ejecutivo II (Director Regional de Guayama). Al 1ro. de julio de 1974 le extendieron un nuevo nombramiento en el Servicio sin Oposición en la misma clase.

3. El 1ro. de octubre de 1974 la Oficina Central de Personal denegó el nuevo nombramiento porque entendió que la Sra. Rodríguez no reunía los requisitos mínimos para la clase de Director Ejecutivo II al 1ro. de julio de 1974, ni al primero de marzo de 1973.

4. Conforme a la carta del 29 de noviembre de 1974 (Exhibit IV), el Departamento de Servicios Sociales también entendió que la Sra. Rodríguez no reunía los requisitos del puesto de Director Ejecutivo II al que fue nombrada, aceptando que dicho nombramiento se debió a un 'error involuntario' como resultado del asesoramiento recibido. Dicha comunicación solicitaba, sin embargo, que se reconsiderara el caso, lo cual, fue denegado posteriormente por la Oficina Central de Personal.

5. El 1ro. de julio de 1974 la Sra. Rodríguez fue nombrada en un puesto de Director Ejecutivo I en el Servicio sin oposición. Este reclutamiento se formalizó en base a una reclasificación del puesto y en base a la convalidación de la experiencia adquirida en el puesto de Director Ejecutivo II, al cual ella no cualificaba y del cual fue separada.

6. Efectivo el 1ro. de octubre de 1975, el puesto de Director Ejecutivo I que ocupaba fue reclasificado a Director Ejecutivo II. Este puesto corresponde funcionalmente al de Director Regional de Servicios Sociales en Guayama.

7. La Oficina de Personal Central evaluó la solicitud de examen de la demandante en base a la información adicional sobre experiencia que indicó en su resumé adjunto con su solicitud de examen de fecha 3 de diciembre de 1976 y la ingresó al registro de elegibles de Trabajador Social VI, el 13 de diciembre de 1976.

8. El Departamento de Servicios Sociales sometió la Certificación Elegible (OP-8) para autorización de nombramiento provisional en relación a la demandante Rodríguez González a la Oficina Central de Administración de Personal con fecha 28 de diciembre de 1976 y se recibió en la Oficina Central de Personal el 30 de diciembre, en cuya fecha la demandante fue certificada para cubrir el puesto número 112 como Trabajadora Social VI, efectivo al 1ro. de enero de 1977.

9. El Informe de Cambio de la demandante fue devuelto al Departamento de Servicios Sociales con fecha 2 de enero conjuntamente con todos aquellos nombramientos sometidos por la

agencia que estaban pendientes de aprobación o acción por razón de haber sido sometidos durante el período de prohibición."

En la exposición de la teoría de la demandante presentada al tribunal de instancia ésta afirma (1) que obtuvo acceso válido al Registro de Elegibles como Trabajadora Social VI; (2) que al conocer que terminaba en el puesto sin oposición que ocupaba como Directora Ejecutiva II, dirigiendo la Oficina Regional de Guayama, solicitó ingreso al Registro de Elegibles; (3) que entendió que al ocurrir el cambio de gobierno por virtud de que el Partido Popular Democrático perdió las elecciones generales de noviembre de 1976, su puesto, que era de confianza y de fácil selección y remoción según la Sec. 1350 (Empleados de Confianza) del Título 3 de las Leyes de Puerto Rico Anotadas, habría de ser declarado vacante por el nuevo Secretario; (4) que poseía los requisitos necesarios para ingresar al Registro de Elegibles de Trabajadora Social VI y (5) que tiene derecho a seguir ocupando este puesto.

El demandado por su parte expuso su teoría en la forma siguiente: (1) que la demandada no había cumplido con los requisitos para sus anteriores nombramientos de Director Ejecutivo I y II; (2) que por tanto no procedía la convalidación de la experiencia adquirida en dichos puestos; y (3) que la tramitación del nombramiento de Trabajadora Social VI fue ilegal por haber sido efectuado en violación de 3 L.P.R.A. sec. 1337 durante el período prohibido que comprende los dos meses siguientes a las Elecciones Generales.

El tribunal de instancia hizo caso omiso del argumento de la parte demandada relativo al trámite ilegal del nombramiento de la demandante, cuya resolución es crucial para la disposición del caso. Si se determinare que el nombramiento fue ilegal no podría ordenarse la reposición al puesto para el que fue ilegalmente nombrada, o sea, Trabajadora Social VI.

De las propias conclusiones del tribunal sentenciador surge que el nombramiento de la demandante fue tramitado

durante el período de prohibición establecido por el legislador para garantizar que no se tomaren determinaciones sobre las "áreas esenciales al principio de mérito" en el período crítico ante y post eleccionario por motivaciones político-partidistas. La referida Sec. 1337, copiada textualmente, reza como sigue:

"A los fines de asegurar la fiel aplicación del principio de mérito en el servicio público durante períodos pre y post eleccionarios, las autoridades deberán abstenerse de efectuar cualquier transacción de personal que envuelva las áreas esenciales al principio de mérito, tales como nombramientos, ascensos, descensos, traslados y cambios de categoría de empleados.

Esta prohibición comprenderá el período de dos meses antes y dos meses después de la celebración de las Elecciones Generales en Puerto Rico. . . .

Se podrá hacer excepción de esta prohibición por necesidades urgentes del servicio, previa la aprobación del Director, conforme a las normas que se establezcan mediante Reglamento."

El período de prohibición comenzó el 2 de noviembre de 1976, día de las elecciones, y terminó el 1 de enero de 1977. Por tanto, cualquier transacción de personal en relación con "las áreas esenciales al principio de mérito", tales como nombramientos y cambios de categoría de empleados, entre otras áreas, debían posponerse hasta el día 2 de enero de 1977 fecha en que tomaba posesión la nueva administración de gobierno. Esto quiere decir que competía a la nueva administración desde esa fecha realizar las transacciones de personal en relación con las áreas esenciales al principio de méritos. Es significativo que el demandado quiera demostrarnos con la transcripción de evidencia que *todas* las transacciones de personal radicadas en la Oficina Central de Personal durante el período de prohibición fueron devueltas sin aprobar a las agencias. Tal actuación revela un patrón seguido por la Oficina Central de Personal y no una actuación particular en el caso de la demandante.

De todas maneras las conclusiones de hecho del tribunal de instancia definitivamente establecen que todos los trámites

relacionados con el nombramiento de la demandante se hicieron durante el período de prohibición. La demandante ocupó el puesto de Directora Ejecutiva II, puesto de confianza, hasta el 31 de diciembre de 1976, pero los trámites del nuevo nombramiento comenzaron dentro del período crítico según las palabras de la demandante vertidas en su memorando explicativo de 3 de junio de 1977 radicado ante el Tribunal Superior:

". . . al conocer que terminaba en el puesto sin oposición que ocupaba como Directora Ejecutiva II, dirigiendo la Oficina Regional de Guayama del Departamento de Servicios Sociales, solicitó ingreso al Registro de Elegibles para Trabajadora Social VI que estaba abierto mediante la convocatoria de Reclutamiento continuo vigente desde 1974.

Entendió la demandante que al ocurrir el cambio de Gobierno por virtud de que el Partido Popular Democrático perdió las Elecciones Generales de noviembre de 1976, su puesto que era de confianza y de fácil selección y remoción según la Sección 1350 del Título 3 de Leyes de Puerto Rico Anotadas, habría de ser declarado vacante por el nuevo Secretario del Departamento de Servicios Sociales, quedando ella cesante y sin empleo."

La prueba más contundente de que la transacción se hizo durante el período de prohibición queda de manifiesto al examinar el *Exhibit* 6 que es el "Aviso de Certificación al Elegible" cursado a la demandante en 28 de diciembre de 1976. Aunque el Aviso indica que "no constituye oferta de nombramiento", es de sorprender que entre esa fecha y el 31 de diciembre, o sea en el lapso de tres días, se efectúa el nombramiento para ser efectivo el 1 de enero, o sea, el día antes de tomar posesión el nuevo Gobierno, pero aún dentro del período de prohibición.

Es evidente que el legislador quiso evitar precisamente lo que sucedió en este caso, el que los jefes de gobierno tomaran determinaciones con respecto a las "áreas esenciales al principio de mérito" en el período ante y post eleccionario en previsión de que no se tomaran ventajas ni represalias por razones político-partidistas, que indudablemente van a la esen-

cia de las garantías protectoras del sistema de mérito del personal público.

Comoquiera que la demandante puede aún acudir ante la Oficina Central de Administración de Personal para que se le certifique como elegible para el puesto para el cual cualifique (que no necesariamente sería el de Trabajadora Social VI) y de no estar conforme con lo allí resuelto tiene un recurso legal ante la Junta de Apelaciones, es evidente que no se le han cerrado las puertas del remedio administrativo. La Junta sería el organismo apropiado para dilucidar su derecho en primera instancia. 3 L.P.R.A. sec. 1394, Sup. Acum. 1977.

No siendo válido el nombramiento de Trabajadora Social VI, la demandante no tendría ningún derecho en ley a permanecer en ese puesto. Es posible, sin embargo, que la demandante tenga algún derecho a ser reinstalada al servicio público en algún puesto de carrera igual o similar al que ocupara en el servicio de carrera al momento en que pasó a ocupar el de confianza—3 L.P.R.A. sec. 1350, Sup. Acum. 1977 —pero esta posibilidad no fue objeto del recurso instado.

El planteamiento constitucional sobre discrimen político puede tener validez, pero en vista de que las circunstancias señaladas precedentemente, indican la existencia de razones válidas para la suspensión de la demandante, es mi criterio que debemos examinar cuidadosamente los testimonios prestados ante el tribunal de instancia con respecto a la cuestión de discrimen político-partidista, según nos lo solicitan los demandados. La mera alegación o declaración sobre la discrepancia entre ideologías políticas entre el empleado afectado y los funcionarios gubernamentales que toman las decisiones no debe utilizarse para encubrir la verdadera razón que impele a las autoridades nominadoras a efectuar cambios de personal. Debe requerirse prueba sustancial de que el motivo de la acción tomada se debe a razones políticas. De lo contrario habría que asegurar un empleo, aun contra los principios que rigen el sistema de mérito, todo aquel que no comparte

las ideas políticas de su jefe. Esta discrepancia de criterio de ideología política sería la mejor garantía para conservar un puesto público.

Consistente con lo expresado por mí al concurrir en la opinión disidente emitida por el Juez Asociado Señor Martínez Muñoz en el caso de *Báez Cancel* v. *Alcalde Mun. de Guaynabo*, 100 D.P.R. 982 (1972), soy de opinión que aun "los empleados irregulares, no permanentes, del gobierno y de sus agencias y de los municipios están constitucionalmente protegidos en sus empleos contra el despido discriminatorio por razón de ideas políticas. La larga tradición de discrímenes por motivo de ideas políticas en el empleo . . . [público] . . . requiere que los tribunales escudriñen la prueba para asegurarse que verdaderamente no ha habido discrimen en la actuación de la autoridad nominadora." A la pág. 992. Pero cuando hay razones válidas que sostengan la determinación de la autoridad nominadora para efectuar cambios en el personal público conforme lo dispone la ley, deben los tribunales escudriñar con sumo cuidado las alegaciones de discrimen político que podrían utilizarse más bien como una espada y no como escudo protector de derechos constitucionales.

Comoquiera que el tribunal de instancia concluyó como cuestión de hecho que en este caso hubo discrimen político sin que dicha conclusión esté basada en otros hechos que no sean las declaraciones de la demandante tendientes a demostrar su ideología política contraria a la de la parte demandada estimo que debimos, por lo menos, haber autorizado la transcripción de la prueba oral y documental, para asegurarnos si realmente la autoridad nominadora discriminó inconstitucionalmente contra la demandante, a la luz de todas las circunstancias presentes en este caso y determinar si el trámite que culminó en el nombramiento de la demandante está viciado de nulidad por haber sido efectuado durante el período de prohibición que dispone la Ley de Personal del Servicio Público para garantizar la pureza del proceso administrativo en relación con los servicios públicos. Tan discriminatorio

puede ser un nombramiento hecho durante el período crítico ante y post eleccionario en que está prohibido por la ley, por afectar éste el derecho de otro candidato apto y cualificado para el mismo puesto, que una destitución efectuada por motivos políticos. Ambas actuaciones adolecen del mismo vicio. Ello merece y requiere la eterna vigilancia de los tribunales.